Okay, our next case this morning is number 14-11-53, Conte v. Jakks Pacific, Inc., Mr. Webb. Your Honor, if it pleases the Court, there are three issues that are the most important. First, the underlying court said that our patent for my client was invalid as being obvious. Second issue, that it did not infringe. Third issue, that we did not have adequate showing for leave to amend our complaint. First, let me address the issue of obviousness. There's two cases that the underlying court relied on to make its decision that our patent was obvious and it was invalid. The first case is the Freedman case. I fervently believe that the Freedman patent was entirely different from ours. Now let me explain to you why. I have a three and a five-year-old. When I do something with my five-year-old, my three-year-old needs to be occupied. If I gave my three-year-old some sort of a device that mirrored the Freedman patent, that showed not only the direction, the exact vector, but which way she was to go to find that element, like the Freedman patent was designed to do for blind people, to quickly find what they're looking for, my three-year-old would be done with that game in no time flat. Whatever I'm doing with my five-year-old would have to wait. Compared to our patent, our patent is a game that uses triangulation and it doesn't have the direct vectors and the quickly leading elements that the Freedman patent has. They're different animals entirely. The purpose of them is different. Our purpose of our patent was to teach and to use and the court's reliance on that was improper. In addition... But JAX doesn't use triangulation, does it? JAX uses the same type of triangulation... It uses signal strength. ...of our client. The signal strength is just like our matter as well. So if you want to go to that, I can. JAX is using the signal strength of the BEW and the FW signals and the court misconstrued that and said that, well, it's only measuring it when it goes inside of a 20-foot radius and inside of a 3-foot radius, but that's not true. Those signals are constantly measuring the difference between that FWBEW and when it goes into that 20-foot radius, it sends and reports a different signal, but it is constantly measuring just like ours is. So to go back to the Freedman patent, on that there's three things. It's different technology entirely. The Freedman patent was measuring time and ultrasonic signals. Our client in our patent was measuring strength of radio signals, an entirely different type of technology. Finally, in addition... When you triangulate an object, you're locating it, are you not? You are locating it. Just with ours, as with JAX. You have a signal, you know you're closer to something, you don't know which way it is. Compared to the Freedman, you know exactly which way you're going. There's no game in that. The purpose was to help blind people find something. So that patent's different. For ours, you know you're within 20 feet. You don't know which 20 feet it is until you start moving. Then you go, okay, I'm still within 20 feet. Which way do I need to go? That kind of triangulation is new, different, and it has a game. And that's the purpose of ours, is to have a game that helps kids use their deductive reasoning skills to find something. So if I understand what you're saying is the technology that was used here was known technology and what you were doing and the invention here was applying it to a hide-and-seek game. Correct. And inside of our patent, even though the court only recognized there were two prior patents disclosed, the patent examiner did not rubber stamp our patent application. The patent examiner actually was given five plus about four different brochures. And so the underlying district court either missed or didn't see the fact that there was actually nine different issues with the patent examiner, some of which the patent examiner found. And so to answer your question, yes, the technology is different than the Freedman and the purpose is different than the Freedman as far as what it's going for. That's a whole different application. The next one is the Hosny patent. And the Hosny patent, as far as finding our patent being obvious, that also has different technology. Our patent specifically calls for a microprocessor to be in the unit. Hosny rejects that and says we don't want the kind of functions or the kind of high technology. It actually says that inside of the Hosny patent and it rejects the novelty of a transmitter, receiver, microprocessor technology. Further, the Hosny patent doesn't teach the type of invention that our invention teaches, which is a hide-and-seek game for a kid to use a remote device to find a toy, which is exactly what... The structure disclosed in your specification for performing the calculating function is a microprocessor? Yes. I assume that microprocessors somehow programmed to perform those functions of calculating a first distance, calculating a second distance, and calculating the difference between the second distances? Exactly. And so that microprocessor... Does your specification disclose how the microprocessor is programmed to perform those functions? No. Inside of Claim 9, it's lined out exactly what the purpose is and what it does, but it does not outline how it does it. Right. And you're supposed to outline that in the spec, how it does it, the structure. And the structure you've got in your spec is a spec, is a microprocessor, but you don't disclose any kind of algorithm in how the microprocessors program. Is that right? Well, let me go into that a little bit. The court said in their analysis of the microprocessor and how it worked, the court said every time you move, the microprocessor in my client's invention was informing. And that's not the same thing. They misconstrued the claim to be a greater than or less than, and that's not what it was as far as how the microprocessor worked. The court also said that there was a calculation of actual distance, and that's not true either. For the Jack's invention, it wasn't a calculation of distance, but it's the FW and the BW signals. And when both of them are at one setting, it knows it's below three feet. When they get strong enough that one of them is different, then they know that they're in between the three and the 20 feet. When it gets strong enough that both of them are outside, then you know it's beyond 20 feet. And so the lower level court said that, well, there's these definitive points and it's only calculating at the three and the 20 feet radius, but that's not true. Those processors inside of the Jack's doll, just like our doll, are constantly getting a signal and receiving a signal and interpreting that signal. And when it reaches that point, that three foot radius or that 20 foot radius, that microprocessor is sending a different output to be told to the user of the game. The next thing is the functionality. The Care Bear doll, not only did the Jack's Care Bear doll anticipate our client's patent, they sent a letter saying, hey, do a quick and dirty analysis of what the 457 patent does because they're already out on the shelves. And my client was selling our dolls out there on the shelves and they come in and they do exactly the same thing that we're doing. A hide and seek doll out there with a remote controlled unit, even stealing some of the same terms, like you're cold, you're getting warmer, you found me. The term's patented. No, good point, Your Honor. But it goes to the nature of the obviousness that they were trying to target what we were successfully not only patenting, but actually selling on the shelves and copying it outright, including their letters where they're saying to their attorney, hey, is this going to work or not? Do we have a shot at making the same doll that they have? And they did. They ripped it off. So- In any children's game for the knowable past, when a child is getting a hint from someone, it generally falls into, you're getting warmer, you're getting colder. You bet. And so the terms, I agree with you, Your Honor. Those terms obviously wouldn't be the ideology of the game moving forward and to have such a close copycat, just even on the doctrine of equivalence, it's just wrong. So I believe as far as the invalidity, and the invalidity being based solely on these two patents, the Friedman patent and the Hosni patent, the intent of those patents was different. The mechanics, the technological use of those patents were different. And I believe we've outlined that pretty clearly in our brief as far as why the calling our patent invalid because of those prior uses is incorrect. As far as the next issue, the infringement issue, there's no dispute that the Care Bear doll literally infringes on the vast majority of all the elements inside of Claim 9. The one issue is this calculating means. And on the calculating means, as I've discussed earlier, it's based on the strength of these signals that it's using. And the lower court misconstrued this as far as it being a distinct signal at 3 and a distinct signal at 20. The Jax Care Bear doll uses something that is constantly measuring and when it gets to a point, it sends a different signal when it hits that 3-foot mark. As far as... Just curious, how is the Care Bear doll different from the Hide and Sneak prior art embodiment that you disclosed in your patent? In the Hide and Sneak embodiment, there's a transmitter, there's a... In some object, there's a seeker unit. The seeker unit is calculating the distance between the seeker and the transmitter inside the object. And then the seeker unit is communicating when you're getting close to that object. And it'll send different signals depending on how close you are to the object. That's how I read column 2 of your patent, indicating that this is prior art. And just based on your description of how the Care Bear device works, that sounds pretty similar. Right. I'll look at it during break and I'll come back to that. My knee-jerk reaction is that the examiner not only looked at the patents that we gave them, but also additional patents such as the Hide and Sneak. And it's determined that ours was sufficiently different enough to understand what purpose was. And inside the file wrapper, their efforts to make sure that ours was sufficiently different, yet notwithstanding recognizing those prior patents that are very similar, I think it strengthens our case for a valid patent. That being said, then we have the challenge of infringement. And as far as Jack's infringement on there, I'll have to think about that one during the break. I apologize. Okay. You want to save the remainder of time for rebuttal? Sure. Mr. Honig. Thank you, Your Honor. May it please the Court. Just two points, I think, are really all that's necessary. The first is with respect to the Friedman patent and the Court's analysis, which was clearly correct. The point is that the only thing that they argued to distinguish from the Sneak patent or from Lebensfeld, which they also cited, is this notion of the triangulation that I think you referred to, this limitation in Claim 9 that their claim, their patent, their improvement was going to involve getting at closer and further rather than just comparing with a fixed distance, as was done in Lebensfeld. And the Court correctly pointed out, if the Jack's product was comparable to anything, it had nothing to do with the 457, but had much more in common with either, as Jim pointed out, the Sneak and Peek and Lebensfeld patent. And so the point is that the only thing that they were adding, if they were adding anything at all, was this notion of moving closer and farther away. And that's exactly what's taught in the Friedman patent. And that's exactly why the Court correctly applied KSR and all of the other 103 law, but in particular, the facts were on all fours with the Supreme Court's finding in KSR, where you took this Asano feature and you combined it with the other features to make it where you're not doing innovation, just something new. You're just having a standard adaptation of two things and putting them together, that that's not subject to a patent, that's obvious and not... The triangulation of necessity must locate a third object or a third thing in relation to two other things. That's the triangulation. The point here is that, suggesting that it's different, is that there it's taking these two distances in comparison. It just doesn't happen in the JAX system. It's like Lebensfeld in that it's only taking a distance that's internal and it's simply saying, taking one measurement that has no reference to any earlier measurement before. And so the obviousness point, don't understand the argument that's being made. And again, I think it's the point that Your Honor made that... Getting back to infringement, your device is calculating an initial distance between the seeker unit and the transmitter, right? Not an initial distance, Your Honor. It's calculating it each time. Each time. It's calculating multiple distances throughout the game. It's calculating a distance against a reference distance of near... And then it does it again. And then it does that sequentially, but each one has no relationship to the prior measurements. Each one is independent and, as in Lebensfeld, is just comparing with this three-pronged internal reference. Well, as soon as you cross a threshold, say from outside 20 feet to inside 20 feet, and then your Care Bear doll provides a new and different indication, some new signal to the holder of the handheld unit, could that be regarded as calculating the relative distance between the first distance, which is outside of 20 feet, and then the second distance when you're now inside 20 feet? No, Your Honor, because it's not doing that. You could argue backwards it's a derivative result, but what it's doing is simply still doing the same thing of taking one distance measurement and taking it against the three-fold inbred criteria and simply placing it in two instead of three or one in place of two. But you're not suddenly magically creating an ability to compare with a different distance. There's simply no memory. There's simply no calculating means. There's nothing to allow it to make any comparison. And in particular, it's why the claim limitation of a relative change is not occurring. It's not doing any relative change. All it's doing is setting forth what it is vis-a-vis these inbred specific parameters as the prior art had already taught for a long time. So those are the two, I think, principal arguments. I think that it's clear and we can rest on the brief with respect to the judge's discretion with respect to the complaint. And unless the court has other questions, I have nothing further. Okay. Thank you, Mr. Hunter. Mr. Webb? Sure. Let me address first what he just said and try to get back to your question, Honorable Tuchin. As far as confusion on the Friedman patent, I don't feel there should be any confusion. With a child who has two legs, as I well know, there is definitely a shift in where they're at on a regular basis, changing two points compared to a fixed object. So there is triangulation. When they move around with that receiver unit and they get different signals, they're having to fix different points. On the Friedman patent, that thing— Mr. Webb, the problem is when you move around, the microphone won't pick up what you say. My apologies. If my child had that Friedman patent that is designed for the blind and it tells them, go straight, that's like taking something around their neck and just pulling them. There's no game to that. You're pulling them directly where? This way? Come. That's a completely different animal. What's new, though? I mean, when I was a trained reconnaissance sergeant in 1970, we used to stand at a point, and we didn't know where it was, and ask the artillery to fire two white phosphorus shells for airbursts. Then we would do what is called a back azimuth, using an azimuth on a lens-attic compass, and work backwards and determine our known location. I think white phosphorus is the ultimate way of saying you're getting warmer. I agree. I just don't give white phosphorus. What's new is the application for kids to use something that's safe and get them in a game that doesn't require adult involvement and have them in something where it's adding to their reasoning skills of where they are in combination to a new location, which is exactly what JACS did after they looked at our successful product on the shelves and did the same thing. As far as the other issue that counsel raised as far as the change in the distance, on our brief, page 26, we note the district court admitted that the Care Bear doll can and does determine a relative change in distance when the seeker unit moves across predefined boundaries. He's actually arguing against his lower court's decision. Just keep that in mind. On the prior, the differences, I apologize, between theirs and that other patent, I don't have that for you, Your Honor. Okay. If we understand the Care Bear doll as just iteratively, independently measuring the distance between the seeker unit and the object that's been hidden, and there's no relationship, there's no calculation between a first distance and a second distance and trying to figure out, has the person moved four feet since the last time we did the calculation, then there wouldn't be infringement of this claim. Is that right? That could be an argument. However, their doll does, with the FW and the DW signals constantly getting stronger and weaker at each time, even though they're outside of a 20-foot radius. Those signals are changing each and every time, even though you're still in that area outside 20 feet. So as they change, when they hit that mark, they send a different report. So there is a constant calculation that's happening. Okay. Thank you, Mr. Webb. The case is submitted. Thank you both counsel.